IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Jacqueline Carnelia Page, | ) | C/A No.: 13-320-JFA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

    A.      Procedural History

On August 13, 2010, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on April 1, 2010. Tr. at 148–60. Her applications were

denied initially and upon reconsideration. Tr. at 88–91. On June 15, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Arthur Conover. Tr. at 24–60 (Hr'g Tr.). The ALJ issued a fully favorable decision on June 28, 2012. Tr. at 17–23. Subsequently, the Appeals Council reversed the ALJ's decision and issued an unfavorable decision on December 7, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 1–7. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on February 5, 2013. [Entry #1].

      B.      Plaintiff's Background and Medical History

           1.      Background

Plaintiff was 45 years old at the time of the hearing. Tr. at 27. She completed high school. *Id.* Her past relevant work ("PRW") was as a fast food worker, home health aide, and cashier/checker. Tr. at 51–52. She alleges she has been unable to work since April 1, 2010. Tr. at 148.

           2.      Medical History

On March 20, 2009, Plaintiff presented to Phil Wallace, M.D., at Dillon Internal Medicine Associates ("DIMA") for a preoperative visit for gynecological surgery. Tr. at 252. She had no real complaints, her blood pressure was well controlled, and she had not had any cholesterol problems in the past. *Id.* She reported a medical history of iron-deficiency anemia and hypertension. *Id.* Dr. Wallace noted her to have no muscle or joint pain, weakness, swelling, inflammation, restriction of motion, atrophy, backache, or

dizziness. Tr. at 253. On examination, Plaintiff demonstrated no edema or varicosities. Tr. at 254. Dr. Wallace cleared Plaintiff for surgery. *Id.*

On April 21, 2009, Plaintiff returned to DIMA and saw Alto Odin, D.O. Tr. at 263. She complained of a rash on her arm and cheek and complained that she was snoring and gasping for air while sleeping. *Id.* On examination of her extremities, Plaintiff revealed a full range of motion; normal stability, strength, and tone; and no misalignment or tenderness. Tr. at 265. Dr. Odin diagnosed her with benign hypertension, a rash, and possible sleep apnea. *Id.*

Plaintiff returned to Dr. Odin on December 4, 2009, complaining of bilateral foot pain for the prior few months. Tr. at 275. She stated that she had been on her feet all day at a new job and felt like her feet collapsed at the end of the day. *Id.* On examination, Plaintiff was noted to be overweight. Tr. at 276. Dr. Odin noted that Plaintiff's feet had collapsed arches with tenderness along the ankle joint, but that she retained a full range of motion. Tr. at 277. X-rays demonstrated bilateral heel spurs, no inflammation of the joint, and no joint erosion. Tr. at 277–78. Dr. Odin intended to check Plaintiff's rheumatoid factor and considered doing a bone scan. Tr. at 277.

Plaintiff followed up with Dr. Odin on December 11, 2009, and reported that her foot pain was much better. Tr. at 279. Dr. Odin advised her to return if her foot pain did not improve as she may need a bone scan or podiatry referral. Tr. at 281.

On March 12, 2010, Plaintiff returned to Dr. Odin complaining of bilateral foot pain and right arm pain that had been going on for "awhile." Tr. at 286. Dr. Odin noted that Plaintiff had a prescription for orthotics, but had lost the prescription. *Id.* On

examination, Plaintiff had collapsed arches with tenderness along the ankle joint, but retained a full range of motion. Tr. at 288. Dr. Odin diagnosed hyperlipidemia, benign hypertension, and tendinitis in the right elbow, and referred Plaintiff to other doctors for her foot pain. *Id.*

Plaintiff sought treatment for pain in her feet with Florence Podiatry Associates ("FPA") on March 29, 2010. Tr. at 333. She stated that her pain was getting worse and that she had no relief from cortisone injections. *Id.* On examination, she exhibited tenderness, but no swelling or crepitation of her joints. *Id.* She was diagnosed with sinus tarsi syndrome/degenerative joint disease ("DJD") of the subtalar joint. *Id.*

Plaintiff saw Dr. Wallace at DIMA on April 28, 2010, and stated that while her blood pressure was well controlled, she was having difficulty with left ankle pain. Tr. at 292. She stated that she had to stand all day the prior day and, as a result, her left leg swelled and she had a limited range of motion. *Id.* On examination, Plaintiff had collapsed arches with tenderness along the ankle joint, but retained a full range of motion. Tr. at 293. She also demonstrated tenderness in her right arm and reduced extension and flexion in her right shoulder. *Id.* An x-ray of Plaintiff's left ankle revealed a spur on the plantar surface of the calcaneous (heel) bone, but no fractures or dislocations. Tr. at 295.

On May 3, 2010, Plaintiff presented to Vision Care complaining of blurred vision. Tr. at 305. The provider noted that there was no apparent pathology for the condition. *Id.*

Plaintiff returned to FPA on May 24, 2010, complaining of a left ankle sprain. Tr. at 333. She was diagnosed with DJD and given a cortisone injection. *Id.*

Plaintiff visited the McLeod Medical Center emergency room ("ER") on August 18, 2010, complaining of mild pain in her right arm, left hip, and both legs. Tr. at 306. She stated the pain was worse with movement. Tr. at 309. She was diagnosed with arthritis and discharged home. Tr. at 307.

Plaintiff returned to Dr. Wallace at DIMA on September 10, 2010, complaining of pain and limited range of motion in her ankles, knees, and feet. Tr. at 323. She weighed 272 pounds, stated that she had gained 18 pounds over the previous five months, and reported having had injections in her feet. *Id.* Her physical examination was similar to that noted on April 28, 2010. Tr. at 324. Dr. Wallace noted that Plaintiff had severe obesity with degenerative changes and encouraged her to lose weight. *Id.*

State-agency consultant Marvin Holsclaw, M.D., completed a residual functional capacity ("RFC") assessment on November 1, 2010. Tr. at 315–22. He opined that Plaintiff could occasionally or frequently lift and/or carry 10 pounds; stand and/or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. Tr. at 316–18. With regard to Plaintiff's complaints of blurred vision, Dr. Holsclaw noted that Plaintiff had not sought current treatment, drove at least twice a day, and read throughout the day. Tr. at 321. He further noted that Plaintiff's only medically-determinable impairments were a bone spur and collapsed arches, but that she had a normal gait and range of motion. *Id.* Finally, Dr. Holsclaw indicated that Plaintiff's activities of daily living ("ADLs") were fairly full and reflected the capacity to perform sedentary work. *Id.*

On January 28, 2011, Plaintiff saw Dr. Wallace and continued to complain of pain in her knees and ankles as well as a problem with her right eye. Tr. at 325. She sought a referral to an eye doctor and an arthritis doctor. *Id.* On examination, Plaintiff's lower extremities were not tender or swollen and she had normal tone and muscle strength in all muscles. Tr. at 326. Examination revealed no tenderness, pain, or swelling in Plaintiff's spine. Tr. at 327. Dr. Wallace diagnosed benign hypertension, hyperlipidemia, non-specific osteoarthritis, and chest pain. *Id.* He noted that x-rays of Plaintiff's knees showed sclerosis of the acetabulum and joint space narrowing compatible with mild DJD. *Id.*

Plaintiff returned to FPA on February 28, 2011, complaining of bilateral foot pain that was worse on the left. Tr. at 332. She reported being on Celebrex for her DJD. *Id.* On examination, Plaintiff had fallen arches and pain at the sinus tarsi. *Id.* The treater intended to obtain an MRI to evaluate for a possible ligament tear and noted two failed cortisone injections. *Id.* Plaintiff followed up with FPA on March 21, 2011. Tr. at 331. An MRI revealed three ligament tears. *Id.*; *see also* Tr. at 335. The treater recommended the use of a brace before considering surgery and recommended Plaintiff continue taking ibuprofen for pain. Tr. at 331.

On May 4, 2011, state-agency consultant James Weston, M.D., completed an RFC assessment. Tr. at 337–44. His findings mirrored those of Dr. Holsclaw. *Id.*

Plaintiff presented to Dr. Wallace on July 1, 2011, for follow up of an ER visit a few days prior when she was told that she had torn ligaments and an infection in her left big toe. Tr. at 408. Dr. Wallace noted that Plaintiff had been prescribed Celebrex at her

last visit, but had not started taking it secondary to cost. *Id.* He also noted that Plaintiff had taken herself off Prevachol secondary to dizziness. Tr. at 410. Dr. Wallace diagnosed likely osteoarthritis and advised Plaintiff to continue on Celebrex. *Id.*

Plaintiff underwent surgery to repair her torn ligaments on August 5, 2011. Tr. at 354–55, 360. At her pre-operative visit with Dr. Wallace, he again noted that she had taken herself off Prevachol secondary to dizziness. Tr. at 415. Approximately four weeks after her surgery, Plaintiff presented to the ER with cellulitis. Tr. at 375. She was admitted to the hospital for two days, during which her cellulitis had cleared markedly and testing was negative for pulmonary embolus. *Id.* X-rays of her left ankle revealed no acute or significant findings. Tr. at 402. On discharge, Plaintiff stated that she felt like she could get by with Naproxen for pain. Tr. at 375. On February 13, 2012, Plaintiff reported that she had an excellent result following the surgery and her range of motion was "just about perfect." Tr. at 345.

On January 19, 2012, Plaintiff presented to Perdue Healthworks ("Perdue") complaining of back pain for two months, numbness in her thighs, and an aching right knee. Tr. at 425. On examination, the straight leg raise test was negative and Plaintiff's right knee had a full range of motion and minimal crepitus. *Id.* Plaintiff was diagnosed Celebrex and referred for x-rays of her back and right knee. *Id.*

At a follow-up visit at Perdue on February 1, 2012, the provider noted that the x-ray of Plaintiff's spine was negative and that x-ray of her knee had not yet been read. Tr. at 426. Plaintiff reported that she could not get her prescription for Celebrex filled

7

because of the cost.  *Id.*  She stated that Naproxen helped, but did not eliminate her pain. *Id.*  She was given a prescription for Meloxicam.  *Id.*

A stress test conducted on May 1, 2012, demonstrated moderate anterior ischemia. Tr. at 407.

On May 31, 2012, Plaintiff presented to Pee Dee Cardiology Associates for a new patient consultation.  Tr. at 430.  She was noted to have a history of an abnormal stress test, hypertension, and chest pain.  *Id.*  Plaintiff reported fatigue, weight gain, chest pain, shortness of breath, swelling of extremities, joint and muscle pain, dizziness, and anxiety. Tr. at 431.  The treating physician diagnosed her with an abnormal cardiovascular function study, dyspnea, unspecified chest pain, and hypertension.  Tr. at 432.

On June 11, 2012, Dr. Wallace completed a restrictions questionnaire regarding Plaintiff's functional limitations.  Tr. at 441–45.  He stated that she could continuously lift up to 20 pounds, frequently carry up to 10 pounds, stand and walk for less than two hours in an eight-hour workday, sit without interruption for up to eight hours in an eight-hour workday, and never need to lie down during an eight-hour workday.  Tr. at 441–42. Dr. Wallace further stated that Plaintiff was not limited in balancing; slightly limited in pushing and pulling with her feet and legs; and moderately limited in climbing, stooping, and kneeling.  Tr. at 442.  He found that pain was present in Plaintiff, but did not prevent her from functioning in everyday activities or work; that medication would aid in reducing her pain without any side effects or reduction in functioning; that she should be able to return to full job duties without any decrease in the level of work effectiveness; and that over time, Plaintiff's pain should diminish to an insignificant level.  Tr. at 443–

8

44. Finally, Dr. Wallace noted that Plaintiff's obesity and DJD could produce the kind of pain that she reported. Tr. at 444.

      C.      The Administrative Proceedings

           1.      The Administrative Hearing

                a.      Plaintiff's Testimony

At the hearing on June 15, 2012, Plaintiff testified that she thought pain in her feet and legs and her obesity kept her from working full time. Tr. at 32. She stated that she also had blurry vision and experienced daily pain in her legs, feet, back, hands, and shoulders. Tr. at 36–38. She said she had dizzy spells every day that lasted for over an hour and that her hands sometimes became numb causing her to drop things. Tr. at 38–40. She said she previously underwent right knee surgery and left foot surgery. Tr. at 32–33. She testified that to deal with the moderate-to-severe pain in her legs and feet, she took Naproxen and elevated her legs at least two to three times a day for 45 minutes at a time. Tr. at 37. She said her medicine made her sleep for about an hour or so. *Id.* She stated that she could sit in a chair comfortably for 30 minutes and could lift approximately 15 pounds. Tr. at 38–39. She testified that she could shower by herself, but that her daughter helped her get dressed. Tr. at 44. She said she drove, attended weekly prayer services, and went to the post office. Tr. at 35, 45–46.

                b.      Vocational Expert Testimony

Vocational Expert ("VE") Robert Brabham reviewed the record and testified at the hearing. Tr. at 50, 137. The VE categorized Plaintiff's PRW as a fast food worker as light, unskilled work; as a home health aide as medium, semiskilled work; and as a

9

cashier/checker as light, semiskilled work. Tr. at 51–52. The ALJ described a hypothetical individual of Plaintiff's vocational profile who was limited to the extent identified in the "restrictions questionnaire" completed by Dr. Wallace (Tr. at 441–45). Tr. at 52. The VE stated that portions of the questionnaire were a little bit contrary, but that based on the overall report, the hypothetical individual could not perform Plaintiff's PRW. Tr. at 53. The ALJ asked whether there were any other jobs in the region or national economy that the hypothetical person could perform. *Id.* The VE stated that the hypothetical individual could perform the light, unskilled jobs of assembler, hand packer, and production inspector. Tr. at 54–55. Upon further questioning by the ALJ, the VE testified that the hypothetical individual could perform no jobs if she had to elevate her foot for 30 minutes three times a day or had to rest twice a day for an hour each time. Tr. at 57–59.

    2.    The ALJ's Findings

In his decision dated June 28, 2012, the ALJ made the following findings of fact and conclusions of law:

1. The claimant's date last insured is December 31, 2012.
2. The claimant has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date (20 CFR 404.1520(b) and 416.971 *et seq.*).
3. The claimant has the following severe impairments: osteoarthritis of the bilateral feet and right upper extremity; back pain; obesity; and cardiac ischemia (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: only indoor work in a temperature-controlled environment; the

>    need to elevate the lower extremities at waist level frequently throughout the day; and limitation due to dizziness as a medicinal side effect.
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
> 7. The claimant was a younger individual age 18–49 on the established disability onset date (20 CFR 404.1563 and 416.963).
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
> 9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).
> 11. The claimant has been under a disability as defined in the Social Security Act since April 1, 2010, the alleged onset date of disability (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 19–23.

        D.    Appeals Council Review

On August 27, 2012, the Appeals Council notified Plaintiff that it was reviewing the ALJ's decision because the actions, findings, or conclusions of the ALJ were not supported by substantial evidence. Tr. at 4. On December 7, 2012, the Appeals Council reversed the ALJ's favorable decision and found that Plaintiff was not entitled to DIB or SSI benefits. Tr. at 4, 7. The Appeals Council stated that it did not agree with the ALJ's RFC determination because the medical evidence did not support the limitations set forth in the RFC. Tr. at 4–5. The Appeals Council adopted the treating physician's functional assessment and the opinion of the vocational expert that, with the limitations described by Dr. Wallace, the hypothetical individual could perform the jobs of assembler, hand packer/packager, and inspector/tester. Tr. at 5.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)      the Appeals Council decision is not supported by substantial evidence; and

2)      the Appeals Council erred in discounting Plaintiff's credibility.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

   A.   Legal Framework

      1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that

impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is

supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

This case presents an unusual circumstance in which the ALJ issued a favorable decision for Plaintiff, but the Appeals Council reversed the decision and found that Plaintiff was not entitled to disability benefits. The ALJ's favorable decision was based on an RFC finding that limited Plaintiff to light indoor work in a temperature-controlled environment and to a job that would take into account her need to elevate her legs at waist level frequently throughout the day and for dizziness as a medicinal side effect. Tr. at 20. However, Plaintiff's treating physician, Dr. Wallace opined that Plaintiff had no environmental restrictions, did not need to lie down during the day, had no side effects from her medications, and could return to full job duties without any decrease in the level of work effectiveness. Tr. at 443, 44. The ALJ found Plaintiff fully credible and accorded Dr. Wallace's opinion "some, but not significant, evidentiary weight." Tr. at 22. The Appeals Council found Plaintiff less than credible based in part on Dr. Wallace's

15

opinion. Thus, the heart of Plaintiff's case is whether the Appeals Council erred in discounting her credibility.

Prior to considering a claimant's subjective complaints, an ALJ must find a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 404.1529; SSR 96-7p; *Craig*, 76 F.3d 585, 591–96 (4th Cir. 1996) (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Id.* at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p, ¶ 4.

Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's subjective claims under the required two-step process. *See Craig*, 76 F.3d at 591–96. The ALJ found Plaintiff's impairments could reasonably be expected to cause some of the symptoms she alleged and that Plaintiff's testimony "concerning the intensity, persistence and limiting effects" of her symptoms was credible. Tr. at 21.

16

On review, the Appeals Council disagreed and found that Plaintiff's subjective complaints were not fully credible "for the reasons identified in the body of [its] decision." Tr. at 6. The body of the decision noted that the medical records did not corroborate Plaintiff's testimony that she must elevate her feet two or three times per day for 45 minutes to an hour each time or her testimony that she experienced daily dizzy spells lasting over an hour. Tr. at 5. The Appeals Council further noted that these complaints were inconsistent with the medical source statement of Plaintiff's treating physician, with her own report of functioning, and with her medical examinations. *Id.* While Plaintiff did report dizziness on April 19, 2012, the Appeals Council stated that her treating physician did not note it as an ongoing problem. *Id.* Finally, the Appeals Council suggested that Plaintiff's complaints were not consistent with her reported ADLs. *Id.*

Plaintiff relies on a Sixth Circuit Court of Appeals opinion to argue that special deference is owed to the ALJ's credibility finding. [Entry #13 at 7 (citing *Beavers v. Sec. of Health, Ed. and Welfare*, 577 F.2d 383, (6th Cir. 1978)). However, that case also states, "It is beyond dispute that the Appeals Council, and the Secretary, have the power to conclude that testimony, even if uncontradicted in the record, is not credible, since the Secretary is entrusted with the duty of making all findings of fact." *Beavers*, 577 F.2d at 386. If the Appeals Council disbelieves a claimant's testimony, "it must make a specific holding on the point when the hearing judge has found the claimant's testimony credible." *Combs v. Weinberger*, 501 F.2d 1361, 1363 (4th Cir. 1974).

17

As it was required to do, the Appeals Council provided specific reasons for discounting Plaintiff's credibility. Its reasons were in accordance with those set forth in Social Security Ruling 96-7p. Based on a thorough review of the record, the undersigned recommends a finding that the Appeals Council's decision to discount Plaintiff's credibility is supported by substantial evidence.

Plaintiff also argues that the Appeals Council placed too much weight on Dr. Wallace's opinion. [Entry #13 at 5]. However, the Appeals Council is permitted to review the evidence and "affirm, modify or reverse" an ALJ's decision based on the preponderance of the evidence. *See* 20 C.F.R. § 404.979. Thus, the Appeals Council is authorized to weigh the evidence differently than the ALJ and has chosen to do so in this case. Plaintiff has presented no persuasive argument to demonstrate that the Appeals Council erred in according greater weight to Dr. Wallace's opinion than the ALJ. She argues that Dr. Wallace's opinion that she could stand and walk for less than two hours in an eight-hour workday seems to preclude her from all gainful employment. [Entry #13 at 6]. This argument is unavailing because the VE testified to several jobs that the hypothetical individual could perform even with the limitations described in Dr. Wallace's opinion. Tr. at 52–55. For these reasons, the undersigned does not find that the Appeals Council erred in the weight it accorded to Dr. Wallace's opinion.

Finally, Plaintiff argues that the Appeals Council improperly considered her impairments in isolation without considering the totality of her impairments. [Entry #13 at 4]. Plaintiff does not cite to any specific error in the Appeals Council decision. Furthermore, she fails to explain how consideration of her combined impairments would

18

have changed the decision. Because the Appeals Council's decision turned on the credibility of Plaintiff's testimony regarding daily dizziness and the alleged need to frequently elevate her legs, the undersigned finds that even if the Appeals Council did not sufficiently explain its consideration of Plaintiff's combined impairments, any error was harmless. *See Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of Social Security benefits where the ALJ erred in pain evaluation because "he would have reached the same result notwithstanding his initial error"); *see also Plowden v. Colvin*, C/A No. 1:12-2588, 2014 WL 37217, at *4 (D.S.C. Jan. 6, 2014) (noting that the Fourth Circuit has applied the harmless error analysis in the context of Social Security disability determinations).

For the foregoing reasons, the undersigned recommends a finding that the Appeals Council did not err in reversing the ALJ's favorable disability determination.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 28, 2014  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

19

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).